UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20CR271 AGF (SPM) |
| ) | |
| EARL GANAWAY, ) | |
| ) | |
| Defendant. ) | |

**ORDER, REPORT AND RECOMMENDATION AND
MEMORANDUM OPINION OF UNITED STATES MAGISTRATE JUDGE**

Defendant Earl Ganaway is charged in a seven-count superseding indictment with three counts of possession with intent to distribute fentanyl and crack cocaine (Counts 1, 2 and 5), two counts of possession of a firearm in furtherance of drug trafficking (Counts 3 and 6), and two counts of being a felon in possession of a firearm in violation of 18 U.S.C. §922(g)(1) (Counts 4 and 7). The charges stem from two separate encounters between Ganaway and law enforcement, first, in August 2019 (Counts 1-4), and then on July 27, 2020 (Counts 5-7).

All pretrial matters have been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). The following pretrial motions are currently pending before the undersigned: Defendant's motion for production of body camera and dash camera video footage (Doc. 71), Defendant's production of alleged victim's name and criminal history (Doc. 72), Defendant's motion to suppress evidence (Doc. 73), Defendant's motion

to dismiss counts 1-4 of the indictment (Doc. 106), and Defendant's motion to reconsider bond (Doc. 122).

## BACKGROUND AND PROCEDURAL HISTORY

Ganaway was initially indicted in a four-count indictment on June 10, 2020, for alleged conduct that occurred in August 2019. He was arrested on July 27, 2020 and appeared before U.S. Magistrate Judge Nannette Baker for an initial appearance and arraignment on July 28, 2020. Ganaway's retained attorney repeatedly requested, and was granted, time to review discovery, complete an investigation, and file pretrial motions. On January 11, 2021, in compliance with the pretrial motion deadlines imposed by the undersigned, defense counsel filed a Notice of Intent to Waive Pretrial Motions (Doc. 35) and the case was set for trial for May 3, 2021, before the Honorable Audrey G. Fleissig. (Doc. 37). Judge Fleissig set the case for a change of plea hearing on March 12, 2021 (Doc. 38) and, subsequently, for a *Frye* Hearing (Doc. 42). In the interim, Ganaway's former retained counsel, Terrence Niehoff, withdrew and new retained counsel, Donnell Smith, entered his appearance. *See* Doc. 39-40. Before Judge Fleissig could conduct the *Frye* hearing, a federal grand jury returned a superseding indictment which added three additional counts arising out of Ganaway's July 27, 2020, arrest. (Doc. 47). As a result, Judge Fleissig vacated the *Frye* hearing and re-referred the case to the undersigned for further pretrial proceedings. (Doc. 48).

Prior to the arraignment on the superseding indictment, Ganaway's retained counsel, Donnell Smith, filed a motion for leave to withdraw (Doc. 51). The undersigned delayed

ruling on the motion until Ganaway secured a new attorney. On April 9, 2021, a new retained attorney, Rick Nelson, entered on behalf of the defendant. Thereafter, at the request of newly retained counsel, pretrial motion deadlines were repeatedly extended through June 18, 2021. On June 19, 2021, after first obtaining leave to file out of time, Ganaway filed a Motion for Production of Body Cam and Dash Cam Video Footage (Doc. 71), Motion for Production of Alleged Victim's Name and Criminal History (Doc. 72), and Motion to Suppress Evidence (Doc. 73). Consistent with the Court's orders, the United States filed its responses to Ganaway's motions, *see* Docs. 79, 84 and 89. After conferring with the parties, the undersigned scheduled an in-person evidentiary hearing on August 10, 2021. (Doc. 81). At the request of defense counsel, the evidentiary hearing was rescheduled two additional times and was ultimately held on October 27, 2021.

At the evidentiary hearing on October 27th, the United States presented the testimony of Detective Anna Kimble, a member of the U.S. Marshals Fugitive Task Force. The undersigned agreed to hold the hearing open to allow defense counsel time to obtain documents subpoenaed from one or more third parties and, if necessary, supplement the record. On November 29, 2021, Ganaway filed a Motion to Dismiss Counts 1 through 4 of the Indictment (Doc. 106). On December 1, 2021, the undersigned held a supplemental evidentiary hearing at which the defendant offered testimony of Detective Matthew Tesreau, a member of the U.S. Marshals Fugitive Task Force. At the supplemental evidentiary hearing, defense counsel stated on the record that the legal issue raised in his motion to dismiss counts 1-4 was intertwined with issues already raised in defendant's suppression

motion and no additional evidence beyond the evidence presented at the supplemental hearing on December 1st would be necessary.

On January 24, 2022, Ganaway filed a motion to reconsider denial of defendant's motion for bond (Doc. 122). Although Ganaway's motion to reconsider appears to have been directed to Judge Nannette Baker, the Magistrate Judge who released him on bond, the motion is predicated almost exclusively on the same legal issues Ganaway raised in his Motion to Dismiss Counts 1-4 of the indictment. As such, after conferring with Judge Baker, in the interest of judicial economy and to serve the ends of justice, the undersigned will address Ganaway's motion to reconsider in this Memorandum Opinion and Report and Recommendation.

At the time of the evidentiary hearing on October 27, 2021, it was made clear by counsel for both parties that Ganaway's motion for production of the alleged victim's name and criminal history (Doc. 72) was moot in that the United States agreed to provide the requested information and defense counsel stated on the record that the motion would be resolved once the United States provided the requested information. Because it appears the parties have resolved Ganaway's motion for production of the alleged victim's name (Doc. 72) by way of agreement, that motion will be denied as moot and will not otherwise be addressed in this Memorandum Opinion and Report and Recommendation.

At the end of the supplemental hearing counsel requested, and were granted, time to file additional briefs on the issues raised in Ganaway's pretrial motions. Briefing by both

parties was completed on January 31, 2022, and the matter is now fully briefed and ready for a ruling.

The undersigned has carefully considered the evidence that was offered and admitted at the evidentiary hearing, including the credibility of the witnesses at both hearings. The undersigned has also considered the arguments of the parties both at the hearing and in their written submissions. Based upon the evidence adduced at the hearing and the written submissions of the parties, the undersigned makes the following findings of fact and conclusions of law.

### A. Motion for Production of Body Camera and Dash Camera Video Footage (Doc. 71)

On June 19, 2021, Ganaway filed a motion to compel production of body camera and dash camera footage of his arrest on July 27, 2020, pursuant to Fed. R. Crim. P. 16(a)(1)(E). (Doc. 71). The United States opposed the motion arguing that defendant's motion was moot because the arrest team was not equipped with body cameras or dash cameras and, therefore, no such video footage exists. (Doc. 79). Defendant challenged the United States' proffered information arguing, without citing to any supporting documents or other evidence, that all but one of the arresting officers were St. Louis Metropolitan Department officers and "upon information and belief" the St. Louis Metropolitan Police Department "required the officers involved in the arrest of the Defendant to have both body cams and dash cams during the arrest of the Defendant." (Doc. 83).

Rule 16(a)(1)(E)(i) requires the government to permit a defendant, upon the defendant's request, "to inspect and to copy or photograph books, papers, documents, [and]

data, [among other items]. . . or copies or portions of any of these items" that are "within the government's possession, custody, or control" and are "material to preparing the defense." It is beyond dispute that video footage of Ganaway's arrest would fall within the category of evidence "material" to preparing his defense. Thus, the sole issue in this case is whether Ganaway demonstrated that, notwithstanding its representations to the contrary, the United States has (or should have had) body camera and dash camera footage of Ganaway's arrest in its possession, custody, or control.

At the evidentiary hearing held on October 27, 2021, Detective Anna Kimble credibly testified that she is a detective with the St. Louis Metropolitan Police Department, Intelligence Division, who has been assigned to the U.S. Marshals Fugitive Task Force as a task force officer for the last 13 years. Detective Kimble testified that she and other members of the U.S. Marshals Fugitive Task Force arrested Ganaway on July 27, 2020, pursuant to a federal arrest warrant issued after the return of Ganaway's original federal indictment in this case. Detective Kimble testified that, during her tenure on the U.S. Marshals Fugitive Task Force, she has never worn a body camera or been trained on the use of body cameras. On the day of Ganaway's arrest, neither Detective Kimble nor any of the other members of the U.S. Marshals Fugitive Task Force wore a body camera. Detective Kimble further testified that none of the vehicles being operated by the U.S. Marshals Fugitive Task Force were equipped with dash cameras.

Detective Kimble acknowledged that the St. Louis Metropolitan Department began rolling out a policy regarding body cameras within the last year but noted the policy was

either not in effect or was in the process of being rolled out at the time of Ganaway's arrest. Detective Kimble's testimony made clear that, although she and other task force members are employees of the St. Louis Metropolitan Police Department, Ganaway's arrest was carried out by, and under the direction of, the United States Marshal Service.

Although he was given time to supplement the record with additional evidence, Ganaway offered no evidence (documentary or testimonial) to rebut Detective Kimble's credible testimony regarding the absence of body cameras and dash cameras during Ganaway's July 27, 2020, arrest.

The evidence presented at the evidentiary hearing supports the United States' position that it cannot be compelled to produce dash camera or body camera video footage of Ganaway's July 27th arrest because no such footage exists. Ganaway's failure to substantiate his contrary arguments beyond "information and belief" is fatal to his motion to compel. For the reasons stated above, Ganaway's motion will be denied because the video footage he urges the Court to compel the United States to produce does not appear to have existed such that it was "within the government's possession, custody, or control."

**B.  MOTION TO SUPPRESS EVIDENCE SEIZED ON JULY 27, 2020 (DOC. 73)**

On June 19, 2021, Ganaway filed a motion to suppress a gun, suspected narcotics, and other evidence seized from his car when the U.S. Marshals Fugitive Task Force arrested Ganaway on July 27, 2020, pursuant to a federal arrest warrant. (Doc. 73). Ganaway contends the items seized should be suppressed as the fruit of a warrantless search of his car.

1. **FINDINGS OF FACT**

On June 10, 2020, a federal grand jury returned an indictment charging Ganaway with possession with intent to distribute fentanyl and crack cocaine (Counts 1 and 2), possession of a firearm in furtherance of drug trafficking (Count 3) and being a felon in possession of a firearm in violation of 18 U.S.C. §922(g)(1) (Count 4). An arrest warrant was issued on the same date.

Members of the U.S. Marshals Fugitive Task Force including Detectives Kimbell and Tesreau were tasked with arresting Ganaway on the warrant. Detective Kimbell, who was the case agent on the Ganaway warrant, reviewed Ganaway's charges, arrest history, and obtained prior booking photographs and photographs of Ganaway from the Missouri Department of Revenue. On July 27, 2020, Detective Kimbell received information that Ganaway was expected to be at his lawyer's office (Bob Taafe), so she relayed that information to other members of the team and alerted the other team members that, among other things, Ganaway had an active parole violation with the Missouri Board of Probation and Parole.

The team drove to Ganaway's attorney's office in three separate vehicles. Not long after arriving, the officers saw Ganaway exit the building and walk toward a black Dodge Challenger parked near the building's entrance. As Ganaway entered the driver's side of the vehicle, the taskforce officers activated their lights and sirens and pulled up near Ganaway's Dodge Challenger. Detective Kimble got out of her vehicle and immediately ordered Ganaway to get out of the car with his hands up; but he did not immediately

comply. Although the windows of the vehicle were tinted, Detective Kimble could see Ganaway reaching several times toward the passenger side and reaching with his right arm toward the passenger side of the vehicle as officers were ordering him to get out of the car. Concerned Ganaway may have been reaching for a gun, Detective Kimble warned the other officers that Ganaway was reaching, and they should take cover. Detective Kimble herself took cover behind her vehicle and put her vehicle between herself and Ganaway's vehicle.

At that point, Detective Kimble was joined near Ganaway's vehicle by Detective Tesreau, who approached Ganaway's car from the front and started yelling commands for Ganaway to get out of the car. After Detective Tesreau joined Detective Kimble, Ganaway complied and got out of the car.

As Ganaway got out of the car, both detectives noticed a strong smell of marijuana coming from the car and observed what appeared to marijuana buds strewn all around the floor and seat of the vehicle. The detectives also noticed that the door or cover to the passenger-side glove box was slightly ajar and observed what appeared to be the butt of a gun inside the glove box. The detectives searched the glove box and found, and seized, a loaded 9-millimeter firearm with an extended magazine. The detectives also found and seized from the glove box off-white chunks and green vegetation they suspected was controlled substances.

## 2. CONCLUSIONS OF LAW

Ganaway contends the warrantless search of his car violated the Fourth Amendment. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment may not be introduced at trial to prove a defendant's guilt. *Elkins v. United States,* 364 U.S. 206, 223-24 (1960) (evidence obtained as the result of an unreasonable search and seizure by state officers cannot be used against defendant in federal court). The purpose of the exclusionary rule is to deter constitutional violations. *See United States v. Leon,* 468 U.S. 897, 906 (1984).

"Searches conducted without a warrant are per se unreasonable subject to a few well-established exceptions." *United States v. Madrid*, 152 F.3d 1034, 1037 (8th Cir. 1998) (citing *Horton v. California*, 496 U.S. 128, 133 (1990)). One of these well-established exceptions is the automobile exception. *United States v. Shackleford*, 830 F.3d 751, 753 (8th Cir. 2016); *see United States v. Soderman*, 983 F.3d 369, 375 (8th Cir. 2020). Specifically, officers may "conduct a warrantless search of an automobile if, at the time of the search, they have probable cause to believe that the vehicle contains contraband or other evidence of a crime." *United States v. Farnell*, 701 F.3d 256, 264 (8th Cir. 2012). If there is probable cause to believe a vehicle contains evidence of criminal activity, officers are authorized to search "*any area of the vehicle* in which the evidence might be found." *Arizona v. Gant*, 556 U.S. 332 (2009) (emphasis added).

The automobile exception extends to containers/storage areas like glove boxes—whether opened or closed. *See California v. Acevedo*, 500 U.S. 565, 570 (1991) ("[i]f probable cause justifies the search… it justifies the search of every part of the vehicle and its contents that may conceal the object of the search" and this includes a "'probing search of every part of the vehicle and its contents that may conceal the object of the search."); *United States v. Stringer*, 739 F.3d 391, 395 (8th Cir. 2014) (after probable cause existed, officers were "permitted to search the vehicle and any closed containers therein."). In other words, the "scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted…it is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 824 (1982).

"In determining whether an officer had probable cause to search, courts apply a commonsense approach and consider all relevant circumstances." *Farrell*, 701 F.3d at 264. A law enforcement officer "may draw inferences based on his own experiences." *U.S. v. Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017). The Eighth Circuit has repeatedly held that a warrantless search of a vehicle is justified by an officer smelling the odor of burnt marijuana. *See United States v. Brown*, 634 F.3d 435, 438 (8th Cir. 2011); *United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000) (holding the smell of marijuana gave the deputy probable cause to search defendant's truck for drugs); *United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999) (stating "detection of the smell of burnt marijuana . . . gave [the officer] probable cause to search the entire vehicle for drugs").

Based on the foregoing factual findings, the warrantless search of Ganaway's car, including the glove box, fell within the automobile exception and, therefore, did not run afoul of the Fourth Amendment. As the factual findings demonstrate, at the time of the search, the officers had probable cause to believe Ganaway's car contained evidence of a crime because: (i) the officers knew Ganaway was a previously convicted felon who was under indictment for federal drug trafficking and gun charges; (ii) Detective Kimble had seen Ganaway making movements inside the vehicle that suggested to her he may be attempting to reach for a gun; (iii) the officers were wearing gear and equipment that would have made it apparent to any reasonable person that they were law enforcement; (iv) when Ganaway was ordered to get out of his car by Detectives Kimble and Tesreau, he failed to comply; (v) when Ganaway finally got out of the car the detectives smelled the strong odor of marijuana coming from the car and saw what they believed to be marijuana buds strewn all over the car; and (vi) the officers observed what appeared to be the butt of a firearm through the partially opened door or cover to the passenger side glove box (the area Detective Kimbell had seen Ganaway reaching toward).

Even if Ganaway's suggestion that the glove box was *closed* before officers searched it were credited as true, it would be of no moment to the Fourth Amendment analysis. The Eighth Circuit has expressly held that where officers have probable cause to conduct a warrantless search of a car, it was reasonable for officers to *pry open a locked glove box* under the automobile exception. *See United States v. Hill*, 386 F.3d 855, 857 (8th Cir. 2004)(when drug dog stopped at the passenger door of a vehicle, the officers

could pry open the locked glove box) (emphasis added); *United States v. Parsons*, No. 4:05 CR 00355 ERW, 2005 WL 3008514, at *2 (E.D. Mo. Nov. 9, 2005) )(discussing *Hill*, 386 F.3d 855, "However, in *United States v. Hill,* the court found that it was reasonable for officers to pry open a locked glove compartment in a car under the automobile exception to the warrant requirement pursuant to similar reasoning."). As such, Ganaway's motion to suppress should be denied.

### C. MOTION TO DISMISS COUNTS 1-4 OF THE INDICTMENT (DOC. 106)

On November 29, 2021, Ganaway filed a motion to dismiss counts 1-4 of the indictment.[1] Read generously, Ganaway's motion to dismiss appears to suggest that the Second Amended Protection Act, signed into law in the State of Missouri on July 21, 2021 (the "Act"), somehow prohibits the United States' prosecution of this case. (Doc. 106). Specifically, Ganaway argues that the Act prohibits the St. Louis Metropolitan police officers who participated in Ganaway's arrests in 2019 and 2020 from cooperating with federal prosecutors and/or from testifying at any trial. Ganaway further contends that, without the officers' cooperation and/or testimony, the United States will not be able to prosecute its case against Ganaway.

The United States has opposed Ganaway's motion arguing, first, that the Act is unlawful; second, that even if Missouri had the power to prohibit state and local agents from participating in a federal prosecution, that fact would not justify dismissing the indictment; and finally, that the Act does not apply to Ganaway because, among other reasons, its scope

---

[1] Although Ganaway's motion is styled as a motion to dismiss counts 1-4, Ganaway appears to attack the viability of all counts in the indictment in both his written submissions and in-court arguments.

is limited to "law abiding citizens" and the evidence presented demonstrates that Ganaway was not, at the time of his arrests, a "law abiding" citizen. *See* Doc. 115, at p. 3-10. The undersigned acknowledges that Missouri's power to prohibit state and local agents from participating in federal prosecutions in the manner suggested by Ganaway seems dubious for the reasons set out in the United States' opposition brief. Ganaway's assertion that the protections offered under the Act would apply to him also seems questionable given the factual findings here. However, for the reasons set out below, Ganaway's motion to dismiss fails even if Ganaway's assertions about the impact of the Act have merit.

Motions to dismiss are, generally, govened by Rules 7 and 12 of the Federal Rules of Criminal Procedure. Under Rule 12, "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). When there is a facial challenge to an indictment, the court must determine whether the indictment is legally sufficient. To be legally sufficient on its face, an indictment must contain all the essential elements of the offenses charged and must fairly inform the defendant of the crime with which he is being charged in sufficient detail so that he may prepare a defense and invoke the double jeopardy clause in any future prosecutions based on the same conduct. Fed. R. Crim. P. 7(c); *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Bowie*, 618 F.3d 802, 817 (8th Cir. 2010); *United States v. Huggans*, 650 F. 3d 1210, 1217 (8th Cir. 2011).  "An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the

offense . . . ." *Huggans*, 650 F.3d at 1218 (quoting *United States v. Hayes*, 574 F.3d 460, 472 (8th Cir. 2009)).

In this case, Ganaway does not directly dispute that the indictment puts him on notice of the charges he is facing. Nor does Ganaway dispute that the individual counts contain the essential elements of the crimes charged. Rather, Ganaway argues the charges should be dismissed in advance of trial because, under the Act, the officers involved in his arrest will not be available to the United States at trial. As such, Ganaway's assertions are best characterized, not as an attack on the sufficiency of the indictment, but as an attack on the sufficiency of the United States' evidence at trial.

The Eighth Circuit has repeatedly held that "federal criminal procedure does not allow for pre-trial determination of the sufficiency of the evidence." *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001) (quoting *United States v. Critzer*, 951 F.2d 306, 307–08 (11th Cir.1992)). In so holding, the Eighth Circuit has recognized that, in criminal cases, "there is no corollary" to the summary judgment procedures contemplated by the Federal Rules of Civil Procedure. *Ferro,* 252 F.3d at 968. The Eighth Circuit has also recognized that the "government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to [Rule 29]." *Id.* The Eighth Circuit has disapproved "dismissal of an indictment on the basis of predictions as to what the trial evidence will be." *Id.* Indeed, in *United States v. Robinson,* 903 F. Supp. 2d 766, 776 (E.D. Mo. 2012), *aff'd.* 781 F.3d 453 (8th Cir. 2015) this Court rejected a defendant's argument

that an indictment should be dismissed because the government would not be able to meet its burden of proof at trial.

Ganaway has presented the Court with little more than speculation about what evidence the United States may or may not be able to present at trial based on his understanding of the Act. ² Ganaway's predictions as to what the trial evidence will (or will not) be is not an appropriate basis for granting a pretrial motion to dismiss. *See Ferro,* 252 F.3d at 968. For these reasons, Ganaway's motion to dismiss the indictment should be denied.

### D. MOTION TO RECONSIDER BOND (DOC. 122)

On January 24, 2022, Ganaway filed a Motion to Reconsider Denial of Defendant's Motion for Bond to Be Set at $1000.00 (Doc. 122). In his motion, Ganaway argued the Court should reconsider its order of detention because passage of Missouri's Second Amendment Protection Act (the "Act") constituted a changed circumstance that significantly weakened the strength of the government's case against him. After carefully considering the entire record, including the initial order of detention, the written Pretrial Services Report, and the parties' written submissions, the defendant's motion will be denied for the reasons set forth below.

Under the Bail Reform Act, a judicial officer may reopen a detention hearing at any time before trial "if the judicial officer finds that information exists that was not known the

---

² It is important to note that, although he had the opportunity to question two of the officers involved in his arrest, Ganaway did not solicit any testimony, and has offered no evidence to suggest, that the officers do not intend to testify at trial or otherwise participate in Ganaway's prosecution because of the Act.

movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the [defendant's appearance] as required and the safety of any other person and the community." 18 U.S.C. §3142(f). Such newly discovered evidence must be "sufficient to overcome the key factors on which the initial order of detention w[as] predicated." *United States v. Rush,* 4:14CR88 RWS, 2017 WL 6541436, at *3 (E.D. Mo. Dec. 1, 2017).

In this case, Ganaway was ordered detained by U.S. Magistrate Judge Nannette Baker on August 11, 2020, following a detention hearing. (Doc. 24). In granting the United States' motion for pretrial detention, Judge Baker found that the nature of the charges gave rise to the rebuttable presumption that no conditions would reasonably assure the safety of the community or the defendant's appearance. Judge Baker considered the facts contained in the written pretrial report and concluded that Ganaway failed to rebut the presumption. Judge Baker also found that detention was appropriate based upon the weight of evidence against Ganaway; the fact that Ganaway was subject to a lengthy period of incarceration if convicted; Ganaway's prior criminal history; Ganaway's participation in criminal activity while on probation, parole, or supervision; Ganaway's history of violence or use of weapons; Ganaway's history of substance abuse; Ganaway's lack of stable employment; and Ganaway's prior violations of probation, parole, or supervised release.

Ganaway's request for reconsideration of a bond rests exclusively on his contention that passage of the Act has imperiled the United States' case against him. Specifically,

Ganaway contends he should be released because the government's case against him is not as strong as it appeared to be at the time of this detention hearing. This contention is unavailing because, for the reasons set out above, Ganaway's motion to dismiss the indictment lacks merit. Admittedly, Ganaway's odds of being released may well improve if, as he has predicted, the United States is unable to rely on testimony from state and local law enforcement at trial. However, at least at this juncture, Ganaway's contention that passage of the Act has somehow imperiled the United States' case is not borne out by the record.

Ganaway's motion for reconsideration also fails because the changed or new circumstance he relies upon—namely, passage of the Act—does not have a "material bearing on the issue of whether there are conditions of release that will reasonably assure [his appearance] as required and the safety of any other person and the community." 18 U.S.C. §3142(f). Ganaway's order of detention was predicated upon, among other things, concerns stemming from his criminal history, substance abuse, participation in criminal activity while on probation, parole, or supervision, history of violence or use of weapons and prior violations of probation, parole, or supervised release. Ganaway has failed to even attempt to explain how the passage of the Act might help to overcome the initial reasons for pretrial detention. Ganaway's motion should be denied because the new/changed circumstance he relies upon is not "sufficient to overcome the key factors on which the initial order of detention w[as] predicated." *Rush,* 14CR88 RWS, 2017 WL 6541436, at *3.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for production of body camera and dash camera video footage (Doc. 71) be **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's production of alleged victim's name and criminal history (Doc. 72), be **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendant's motion to reconsider bond (Doc. 122) be **DENIED**.

**IT IS HEREBY RECOMMENDED** that Defendant's motion to suppress evidence (Doc. 73) be **DENIED**; and

**IT IS FURTHER RECOMMENDED** that Defendant's motion to dismiss counts 1-4 of the indictment (Doc. 106) be **DENIED**.

The parties are advised that they have fourteen (14) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained. Failure to timely file objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix,* 897 F.2d 356 (8th Cir. 1990).

Trial in this case will be conducted before the **Honorable Audrey G. Fleissig**. Judge Fleissig will schedule the trial later by a separate order.

Dated: March 1, 2022.

*/s/ Shirley P. Mensah*
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE